IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON JV LLC, a New York limited
liability company,

               Plaintiff,

     v.

ADVANCE INVESTMENT CORP. d/b/a
AIC, an Oregon limited liability company, et
al.,

               Defendants/Third-Party Plaintiffs,

     v.

MENACHEM SILBER, an individual

               Third-Party Defendant.

No. 3:22-cv-00337-HZ

OPINION & ORDER

Daniel Roseman
Paul T. Sheppard
HINMAN, HOWARD & KATTELL, LLP
707 Westchester Avenue, Suite 407
White Plains, NY 10604

Joseph Mabe
Keith Pitt
SAPIENT LAW
425 NW 10th Avenue, Suite 200
Portland, OR 97209

     Attorneys for Plaintiff and Third-Party Defendant

David P. Smith
THE SMITH FIRM
1754 Willamette Falls Drive
West Linn, OR 97068

     Attorney for Defendants/Third-Party Plaintiffs

Cassie K. Jones
GLEAVES SWERINGEN LLP
975 Oak Street, Suite 800
Eugene, OR 97401

     Attorney for Defendant CLS Investments LLC

HERNÁNDEZ, District Judge:

     Plaintiff Oregon JV LLC brings this action against Defendants Advanced Investment

Corp. (d/b/a "AIC"), AIC principal Austin Walker, Joseph Russi, and fifty-one individual

"Defendant Lenders."  Defendant AIC managed a pool of construction loans to Defendant Russi,

each of which was funded by a distinct Defendant Lender. Plaintiff's assumption of those loans

form the basis of its claims for fraud, unjust enrichment, negligent misrepresentation, and

rescission of contract. Defendant AIC, Defendant Walker, and Defendant Lenders filed a Motion

for Summary Judgment, arguing that "the lawsuit is meritless[.]"[1] For the reasons that follow, the

Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.

///

---

[1] Defendant CLS Investments, LLC, joins in Defendant AIC and Defendant Lenders' Motion for
Summary Judgment. Thus, for the purposes of this motion, "Defendants" includes Defendant
AIC, Defendant Walker, Defendant Lenders, and Defendant CLS.

**BACKGROUND**

This case arises out of a failed residential construction project. In January 2018, Defendant Russi—a homebuilder—began working with Defendant AIC—a real estate investment company run by Defendant Austin Walker—to secure funding to acquire 100 building lots for the construction of houses. SAC ¶¶ 46, 64; Walker Decl. ¶ 3, ECF 113. Third-Party Defendant Silber ("Silber") is a member of Plaintiff Oregon JV LLC and the principal and owner of TopRock Funding, LLC. Smith Decl. Exs. 1, 2, 4, 111. After the project began to struggle, Plaintiff and Silber provided funding to Defendant Russi, eventually assuming the debts owed by Defendant Russi to Defendant Lenders. The core of Plaintiff's complaint is that it was fraudulently induced into assuming these loans because Defendants failed to disclose the disastrous financial state of the construction project.

In April 2018, Defendant AIC began originating construction loans to Defendant Russi with principal amounts ranging from $142,000 to $1,250,000. SAC ¶ 46. Fifty-one of these loans are at issue in this litigation, each secured by an associated property. SAC ¶ 46. Defendant AIC solicited third-party investors to fund the loan amounts in exchange for the right to receive interest payments from Defendant Russi. Mabe Decl. Exs. 1, 2, ECF 130. Defendant AIC promised its investors returns at 11% per annum. *Id.* Defendant Russi held title to the underlying parcels. SAC ¶¶ 46, 48.

An agreement between Defendant Russi and Defendant AIC governed the construction draws. Mabe Decl. Ex. 30 (Instruction and Authorization Concerning Construction Reserve Account). Defendant AIC was the "Reserve Administrator," responsible for managing funds received from investors and disbursing those funds to Defendant Russi for specific construction costs. Mabe Decl. Ex. 30. Per Defendant AIC's policies, each loan draw was to be accompanied

by (1) an updated construction budget, (2) a copy of the paid invoices or paid receipts for reimbursement, (3) a completed Authorization for Release of Funds Form, and (4) photographs of the completed work. Mabe Decl. Ex. 30 at 3.

Trouble with the project began in late 2019 and early 2020. In late 2019, construction on the projects slowed because Defendant Russi could not hire enough subcontractors to complete the large volume of construction projects in a timely manner. Duncan Decl. ¶ 3, ECF 112. Defendant Russi encountered legal trouble and ended up in litigation with VASE LLC over the buildability of a parcel that VASE sold Defendant Russi. *See* Douglas County Circuit Court Case No. 20cv12948. Judgment entered against Defendant Russi in the VASE case encumbered Russi's entire portfolio. Smith Decl. Ex. 6 at 38. In early 2020, Defendant Russi encountered more difficulties. His wife was very ill, Smith Decl. Ex. 11 at 2, and the COVID-19 pandemic essentially halted all construction, Smith Decl. Ex. 10.

To continue to fund his project, Defendant Russi turned to Top Rock and Silber in early 2020. Smith Decl. Exs. 7–9; Mabe Decl. Exs. 8, 9. In March 2020, Defendant Russi executed a promissory note in favor of Silber and Top Rock in the amount of $1,295,862.50 with an interest rate of the lesser of 72% per year or the maximum rate allowed under Oregon criminal law. Smith Decl. Ex. 12. Russi's entire portfolio became collateral for the promissory note. Smith Decl. Exs. 13, 14.  A few months later, Defendant AIC worked out a plan to help remedy some of Defendant Russi's financial issues, including providing additional funding to complete construction. Walker Decl. ¶ 5, Ex. 1. Jeremy Parmenter, a real estate agent who listed homes completed by Defendant Russi, also sought a lien release from Silber and TopRock in May and June of 2020. Mabe Decl. Exs. 8, 9; Smith Decl. Ex. 11.

Then, in July 2020, Defendant Russi filed for bankruptcy. Walker Decl. Ex. 2. Defendant AIC tried to work towards dismissal of the bankruptcy. Mabe Decl. Exs. 13–18. Defendant Silber and Top Rock also sought relief from the bankruptcy in the hopes that they could sell or foreclose on some of the properties. Smith Decl. Exs. 19–20.

During this period, Defendant AIC provided information regarding some of their loans to Silber through Parmenter, including the lender name, property ownership, loan balance, reserve balance, and property address. Walker Decl. Ex. 3; Smith Decl. Exs. 22, 19 at 36–37. Parmenter also created a spreadsheet with a cost breakdown of each of Defendant Russi's communities, cost to finish, remaining construction loan reserves, total construction loan balances, second lien positions, land positions for subordinated lots, and anticipated sales price for each property. Smith Decl. Ex. 19 at 5–19. At least some of this information was supplied by AIC, including the total loan balance and reserve balance for each property. Walker Decl. ¶ 7, Ex. 3. In October of 2020, Parmenter shared this information with Silber. Smith Decl. Ex. 19. Around this time, Defendant Russi also provided Silber with an accounting of all subcontractors and suppliers he owed money to. Walker Decl. Ex. 5. Defendant Silber sent two representatives to Oregon to meet with Defendant Russi's team and tour the properties. Smith Decl. Ex. 27; Duncan Decl. ¶ 5.

In December, Silber and Russi entered into the Transfer Agreement. Smith Decl. Ex. 20. Silber waived the amount owing on the $1,295,862.50 loan from March 2020—which had nearly doubled to $2,295.699.47—and released TopRock's lien position. *Id.* TopRock also agreed to pay Defendant Russi $250,000 and additional amounts once homes were completed. *Id.* In exchange, Defendant Russi agreed to transfer all the properties owned by him individually and by his LLC to TopRock. *Id.*

Soon thereafter, Silber contacted Defendant AIC to move forward with assuming the loans from Defendant Lenders. Smith Decl. Ex. 21. In response, Defendant AIC emailed a spreadsheet to Silber showing the balance for each loan amount, property address, note rate, and loan priority. Smith Decl. Ex. 25. Silber requested updated information about the loans, and Defendant AIC provided the requested information, including information on several accounts where Defendants had advanced funds to cover construction costs above reserves to complete projects. Smith Decl. Ex. 28. In early 2021, Parmenter and Silber continued to communicate about the financial state of the project, and Silber conducted lien searches on all of Russi's properties. Smith Decl. Exs. 29, 34. Then, in February 2021, Silber flew to Oregon to inspect the properties and meet with Defendant Russi and Parmenter to discuss the financial picture for all of Russi's properties. Smith Decl. Ex. 31; Duncan Decl. ¶ 6. In March 2021—after Defendant Russi's bankruptcy was dismissed—ownership of the properties was transferred to Plaintiff. Smith Decl. Ex. 36.

The following month, the parties executed the Assumption Agreements, under which Oregon JV assumed Defendant Russi's debts owed to Defendant Lenders. Walker Decl. Ex. 6; Compl. Ex. A, ECF 1. The Agreements memorialized the loan amounts and construction reserve balances. Compl. Ex. A. The Agreements required certificates of occupancy within six months. *Id.* ¶ 3.3.

Silber and Plaintiff then tried to complete construction on the properties through Parmenter's newly created company, Stone Creek, LLC. Smith Decl. Exs. 40, 5 at 5. Work on the projects was slow and complicated by outstanding legal issues. There was an outstanding lawsuit involving VASE, which precluded sale of the homes. Smith Decl. Ex. 45. Once the VASE lawsuit settled, they tried to list some of the properties for sale. Smith Decl. Exs. 46, 47,

50. But after offers were submitted to the title company, things became more complicated. The Underwriter wanted proof that Defendant Russi was no longer an interested party in the properties, Smith Decl. Ex. 47 at 7, but the Transfer Agreement provided for future payments to Defendant Russi for future houses sold, Smith Decl. Ex. 48 at 3, Ex. 20 at 3. Title companies declined to underwrite the sale of any homes because of the potential for a fraudulent conveyance claim from Defendant Russi's creditors. Smith Decl. Exs. 50, 51. Plaintiff also discovered that the properties were plagued with latent construction defects, requiring deconstruction and remediation. Silber Decl. ¶ 15, ECF 126; Mabe Decl. Exs. 33–35 (Parmenter commenting that the homes have not been built properly).

Progress on development ceased in 2022. In January, Plaintiff and Silber stopped paying interest on the loans as well as insurance, taxes, and utilities on the properties. Smith Decl. Ex. 52; Walker Decl. ¶ 10, Ex. 4. Defendants sent letters to Plaintiff and Silber demanding that they cure the defaults and warning that they could proceed with foreclosure. Walker Decl. Ex. 4. They also stopped construction. Smith Decl. Ex. 52 at 4, 9. To compensate subcontractors, Parmenter instructed them to remove materials from the properties. Smith Decl. Exs. 52, 53. In May 2022, the building permits expired, Smith Decl. Ex. 52 at 20–25, and in July 2022 the City of Roseburg issued derelict building notices, *id.* at 26–32.

As the project collapsed, Plaintiff filed the present lawsuit against Defendants, alleging fraud, negligent misrepresentation, unjust enrichment, and rescission on the basis of mutual mistake of fact. *See* SAC. Plaintiff seeks to void the Assumption Agreements, arguing that Defendants fraudulently concealed information about the financial state of the project to induce Plaintiff into assuming the loans.

///

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under Rule 56(d), "[i]f the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition the court may: (1)

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "[A] Rule 56(d) request need not predict with perfect clarity what discovery will reveal . . . . But a barebones declaration . . . does not satisfy Rule 56(d)." *Pac. Rim. Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 20-16047, 2021 WL 4872460, at *1 (9th Cir. Oct. 19, 2021).

## DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims, arguing that the "lawsuit is meritless and was only filed to stop Defendant Lenders from foreclosing on the Properties nonjudicially."[2] Def. Mot. Summ. J. ("Def. Mot.") 26, ECF 110. At the core of Defendants' motion is their argument that they never misrepresented anything about the status of the construction loans that were to be assumed by Plaintiff. *Id.* at 27. Plaintiff opposes Defendants' motion, arguing in part that further discovery is needed in this case. Pl. Resp. Def. Mot. 40, ECF 129. The Court agrees with Plaintiff. With the exception of Plaintiff's claim for negligence, which is barred by the economic loss doctrine, summary judgment is premature at this juncture.

This is a complex case, involving years of messy business relationships and transactions between a builder who was in over his head and investors with hopes of high returns on their investment. While the case is over two years old, Defendants' motion was filed only three months after the Rule 16 conference and in the early stages of discovery. Few, if any, depositions

---

[2] In its reply, Defendant CLS raises the issue of vicarious liability, arguing that even if Plaintiff's allegations against Defendant AIC were true "CLS is not vicariously liable for the alleged acts and representations of AIC." CLS Reply 2, ECF 136. The Court declines to address this argument as it was raised for the first time in a reply brief. *See Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

have been taken of the primary witnesses and parties. While the documentary evidence supporting Plaintiff's claims is thin and the burden on Plaintiff is high, the Court finds that additional discovery is needed before the Court can resolve Defendants' motion in this fact-intensive fraud case.

## I.    Fraud

In its first claim for relief, Plaintiff alleges that Defendants AIC and Walker knowingly misrepresented the economic viability of the project and status of construction on the Properties such that Plaintiff would not have assumed the Loan Pool had it known of the misrepresentation. To establish a fraud claim in Oregon, the plaintiff must show that (1) the defendant made a material misrepresentation that was false; (2) the defendant did so knowing that the representation was false; (3) the defendant intended that the plaintiff rely on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff's reliance on that misrepresentation was the cause of damages. *Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351–52, 258 P.3d 1199 (2011), cert. denied, 132 S.Ct. 1142 (2012); *see also Knepper v. Brown*, 345 Or. 320, 329, 329 n.5, 195 P.3d 383, 387 (2008) (noting older cases listing nine elements of common-law fraud, and more recent cases using a more abbreviated list of elements). Plaintiff must establish the elements of its fraud claim by clear and convincing evidence. *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976).

Defendants argue that there is no evidence of any misrepresentations, that Plaintiff justifiably relied on the alleged misrepresentations, or that Plaintiff was damaged by the alleged misrepresentations. Defendants emphasize that this was a business deal, with parties on equal footing, in which Defendants provided accurate information requested by Plaintiff and Plaintiff conducted due diligence. Plaintiff, in response, points to communications between the key

players in this case and an investigation by the Oregon Department of Financial Regulation to demonstrate that Defendant AIC concealed significant mismanagement of the project and loan pool.

Here, additional discovery is warranted. First, there is a factual dispute as to the roles of key witnesses that could be resolved by further discovery. Defendants argue that "[t]he only representations made about the economic viability of the project or sufficiency of loan funds came directly from Parmenter based on the spreadsheet he/his office created" and "Parmenter's actions cannot be attributed to Defendants in any way, shape, or form." Def. Mot. 28. Plaintiff, however, argues that Parmenter, Russi, and Duncan are Defendants' agents. Pl. Resp. 26. Specifically with regard to Parmenter, Plaintiff points to emails and texts that it suggests demonstrate Parmenter is acting on Walker's orders. Mabe Decl. Ex. 10, 60 (texts between Walker and Russi regarding Parmenter's communications with TopRock and Silber); Mabe Decl. Exs. 19, 61 (texts from Parmenter to Walker communicating Silber's intent to take legal action). Parmenter also provided Plaintiff with a spreadsheet regarding the status of the projects, which evidence shows was at least partially created from information sought from Defendant AIC. Walker Decl. ¶ 7, Ex. 3; Smith Decl. Exs. 19, 22; *see also* Smith Decl. Ex. 23 (spreadsheet created by Parmenter). Plaintiff—through Silber—contends that he relied on statements made by Parmenter, "AIC's existing/prior selling agent," that were false or incomplete. Silber Decl. ¶ 9. Though other evidence in the record suggests the Parmenter held himself out as Russi's real estate agent and, later, associated himself with Plaintiff, Smith Decl. Exs. 11 (2020 email from Parmenter stating "I am a Real Estate Broker and I have been helping facilitate sales and operations for Joe's company"), 19 at 22 (2020 email to Silber with spreadsheets regarding Russi's debt created by Parmenter, who is referred to as "[s]omeone helping Joe out"), 51 (2021

email from Parmenter describing Silber as his "business partner[]"), 55 (2022 email from

Parmenter to Silber cutting ties and stating "I was hired as an employee and not a partner"), these

documents show that, at the very least, Parmenter was significantly involved with the

transactions and communications between the parties. Additional discovery should clarify the

relationships between all those involved.

Second, Plaintiff contends that Defendant AIC directly concealed material information

from Plaintiff, including mismanagement of the loan pool, failing to follow procedures with

regard to loan draws, failing to keep proper loan files, inadequately supervising construction, and

other indications of mismanagement of the project. Silber Decl. ¶¶ 7, 8; Mabe Decl. Ex. 7. In

support of this argument that Defendant AIC knowingly concealed information, Plaintiff cites a

text message from Defendant Walker to Parmenter in which he states, "If Joe [Russi] does

something stupid I've already told him my gloves are coming off and everyone is fucked. I've

documented absolutely everything that has transpired from inception." Mabe Decl. Ex. 53 (text

referencing criminal activity by Russi). Plaintiff also cites a report from an investigation by the

Oregon Division of Financial Regulation, to demonstrate—among other things—that Defendant

AIC failed to comply with its obligations to inspect work and manage loan reserves appropriately

and that Defendant AIC's loan files lacked complete information and an appraisal by an

independent appraiser. Mabe Decl. Ex. 7 at 25–26.[3]  Plaintiff has at least provided evidence that

further discovery is needed. While there is evidence that Plaintiff conducted his own due

diligence that should have revealed some of this information, the extent of the alleged

---

[3] Defendants object to the Oregon Division of Financial Regulation investigative report, arguing
that it is irrelevant and inadmissible hearsay. Def. Reply 26, ECF 134. The Court declines to
resolve Defendants' objections at this time and relies on the report solely to demonstrate that
further discovery—including from Parmenter and Defendant Walker, who were both interviewed
by the Division—is warranted.

concealment or misrepresentations by Defendant AIC, the parties' knowledge, the falsity of the information, and the materiality of the misrepresentations can only be fully elucidated by further discovery beyond the documents cited here.

## II.    Unjust Enrichment

In its second claim for relief, Plaintiff alleges Defendant Lenders were unjustly enriched when they induced Plaintiff into assuming the loan pool by false representations or omissions. SAC ¶¶ 101–05. Under Oregon law, a claim for unjust enrichment requires the plaintiff to establish that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it." *Winters v. Cnty. of Clatsop*, 210 Or. App. 417, 421, 150 P.3d 1104 (2007).

First, Defendants argue that the unjust enrichment claim is no longer cognizable if the Court finds that the Assumption Agreements were not procured by fraud and therefore enforceable. Def. Mot. 35; Def. Reply 25. Defendants also repeat the merits of their arguments on the fraud claim to argue that there is no factual basis for this claim. Def. Mot. 36–37. As described above, the Court finds that further discovery is necessary on this issue. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's unjust enrichment claim.

Separately, Defendants argue that Plaintiff's claim relies on a formulation of unjust enrichment that "has been abandoned by the Oregon Supreme Court." Def. Mot. 36 (citing SAC ¶¶ 103–04 and *Larisa's Hone Care, LLC v. Nichols-Shields*, 362 Or. 115, 129–32, 404 P.3d 912 (2017)). While Defendants are correct that the Oregon Supreme Court has adopted "incremental rule development on a case-by-case basis, based on recognized grounds for imposing liability"

for unjust enrichment claims, *see Emanuel Displaced Persons Ass'n 2 v. City of Portland*, Case No. 3:22-cv-1896-SI, 2023 WL 8292606, at *11 (D. Or. Dec. 1, 2023), fraud is an established legal category of unjust enrichment under Oregon case law, *Larisa's*, 362 Or. at 133. Here, Plaintiff alleges "[i]t would be inequitable under the circumstances to allow the Defendant Lenders to retain the benefits conferred upon them because they were procured by Defendant Lenders through their agents' false representations and omissions—whether fraudulently made or negligently misrepresented." SAC ¶ 104. Accordingly, the Court declines to dismiss Plaintiff's unjust enrichment claim on this ground.

## III.    Negligent Misrepresentation

Plaintiff alleges Defendants "breached their duty of care in managing the Loan Pool and in making associated false representations to Plaintiff concerning the nature and status of the construction[.]" SAC ¶ 107. Under Oregon law, "a negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pac. Corp. v. Trustees of Bronson,* 315 Or. 149, 159, 843 P.2d 890 (1992). In other words, the economic loss doctrine "bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss, unless there is a special relationship between the parties." *Harris v. Suniga,* 344 Or. 301, 305, 180 P.3d 12 (2008). Economic losses are defined as "financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." *Onita*, 315 Or. at 159 n.6. "A 'special relationship' exists only when one party has authorized the other to exercise independent judgment [on] his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging

to the other party." *Ironwood Homes, Inc. v. Bowen*, 719 F.Supp.2d 1277, 1289 (D. Or. 2010).

"The common thread in the special relationships that the Supreme Court has recognized as

giving rise to a duty of care to protect against purely economic loss is that the professional is

acting, at least in part, to further the economic interests of the person to whom the duty is owed."

*Ammons v. Jackson Cnty*, 119 Or.App. 181, 184, 850 P.2d 376, rev. den. 318 Or. 24, 862 P.2d

1304 (1993).

      In *Onita*, for example, the Oregon Supreme Court asked "whether, during the parties'

arms-length negotiations, in addition to a duty of honesty, defendants owed plaintiffs a duty to

exercise reasonable care in communicating factual information to prevent economic losses to

plaintiffs." 315 Or. at 160. The Court concluded that they did not. The Court explained that

certain professional, contractual, or principal-agent relationships could give rise to the tort duty

to exercise reasonable care on behalf of another's interests. *Id.* at 160–61. In *Onita*, however,

there were no such relationships. The parties were engaged in a complex real estate transaction

and their dispute centered on their contractual relationship. *Id.* at 153–55.  The Court held that

"in arm's-length negotiations, economic losses arising from a negligent misrepresentation are not

actionable." *Id.* at 161–62.

      Similarly, here, there was no special relationship. In response to Defendants' motion,

Plaintiff argues that "Plaintiff entrusted AIC to exercise independent judgment (effectively, on

Plaintiff's behalf) to provide an objective and accurate assessment of the Subject Properties and

attendant loans based on AIC's institutional knowledge and ostensible management of the

project." Pl. Resp. 36 ("AIC provided Plaintiff with a bevy of false/fabricated information, all to

advance *AIC's* own interests[.]"). But Plaintiff has not identified any evidence demonstrating that

Defendant Lenders or their alleged agents owed a special responsibility to take care of Plaintiffs'

affairs, or that Defendant Lenders were acting to further Plaintiffs' economic interests. The Court finds no evidence to support Plaintiff's contention that the parties had a professional, contractual, or other principal-agent relationship giving rise to a special duty. *Cf. Meininger v. Henris Roofing & Supply of Klamath Cnty., Inc.*, 137 Or. App. 451, 453–55, 905 P.2d 861 (1995) (finding that a special relationship existed where the defendant-roof inspector was hired to provide a professional opinion about the condition of a roof, which it knew would be relied upon by the plaintiffs). As in *Onita*, the relationship between the parties—adverse parties in an arm's length business transaction—is not a special relationship. "[I]n such an adversarial relationship, 'a negligent misrepresentation claim is not actionable.'" *Id.* (citing *Onita*, 315 Or. at 165).

## IV.    Rescission

Plaintiff alleges the Assumption Agreements with Defendant Lenders are not valid or enforceable because of mutual mistake regarding the systematic over-advancement of the underlying construction loans. SAC ¶¶ 121–23. "A mutual mistake of fact renders a contract voidable by the adversely affected party, where the parties are mistaken as to the facts existing at the time of the contract, if the mistake is so fundamental that it frustrates the purpose of the contract, and where the adversely affected party does not bear the risk of the mistake." *E.g., Lesher v. Strid,* 165 Or. App. 34, 42, 996 P.2d 988 (2000) (internal quotation marks and citations omitted). A mistake "is a state of mind which is not in accord with the facts." *Ellison v. Watson,* 53 Or. App. 923, 927, 633 P.2d 840 (1981). A party seeking rescission based on mutual mistake must "declare its intent to rescind promptly after discovering the grounds for rescission." *Venture Prop., Inc. v. Parker,* 223 Or. App. 321, 349, 195 P.3d 470 (2008) (citing *Snyder v. Rhoads,* 47 Or. App. 545, 554, 615 P.2d 1058 (1980)). "Grounds for rescission on the basis of a mutual mistake of fact . . . must be proved by clear and convincing evidence." *Lesher,* 165 Or. App. at

41 (citations omitted); *Generaux v. Dobyns,* 205 Or. App. 183, 194–95, 134 P.3d 983 (2006) ("To obtain rescission of an instrument for mistake, a plaintiff must establish by clear and convincing evidence that he or she made a mistake that was so fundamental that it frustrated the purpose of the instrument, and the mistake must have existed when the instrument was created.").

This claim, like the claims for fraud and unjust enrichment, is too fact intensive to resolve at this juncture. What the parties knew about the loans and when that information was disclosed needs to be fully developed through discovery. Accordingly, the Court declines to dismiss this claim.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants AIC and Defendant Lenders Motion for Summary Judgment [110] without prejudice to moving for summary judgment after the close of discovery. The Court dismisses Count 1 of Plaintiffs' Third Claim for Negligent Misrepresentation against all Defendants except Defendant Russi.

IT IS SO ORDERED.


DATED:_____September 6, 2024_____.



_____
MARCO A. HERNÁNDEZ
United States District Judge